**2015 UT App 216**

## THE UTAH COURT OF APPEALS

WALKER I INVESTMENTS, LLC,
Plaintiff and Appellant,
*v.*
SUNPEAK ASSOCIATION, INC.,
Defendant and Appellee.

Memorandum Decision
No. 20140085-CA
Filed August 27, 2015

Third District Court, Silver Summit Department
The Honorable Ryan H. Harris
No. 130500510

John D. Morris and Robert S. Rosing, Attorneys
for Appellant

Bruce H. Shapiro, Attorney for Appellee

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGE GREGORY K. ORME concurred. JUDGE J. FREDERIC
VOROS JR. concurred in part and dissented in part, with opinion.

TOOMEY, Judge:

¶1     Walker I Investments, LLC (Walker) appeals from the
district court's order denying its request for access to certain
records maintained by Sunpeak Association, Inc. (the
Association). We affirm.

¶2     Walker owned real property located in a Park City, Utah
subdivision. Because of its ownership, Walker was a member of
the Association, which is incorporated under the Utah Revised
Nonprofit Corporation Act (the Act).

¶3     In July 2013—in the midst of an unrelated and ongoing
lawsuit between Walker and the Association—Walker sent a

letter to the Association asserting its rights under the Act and demanding access to various documents for inspection and copying. Among other things, Walker requested access to the Association's annual meeting records, insurance policies, contracts, and membership list. Walker asserted several purposes for its request, including facilitating the sale of Walker's property, verifying the Association's compliance with applicable laws and with its organizing documents, and investigating the cost and nature of services provided to the Association.

¶4    The Association produced some, but not all, of the requested documents in response to Walker's demand letter. In addition, the Association asserted that prior to Walker's request, it had already disclosed a portion of the requested documents during the course of the parties' litigation. The parties engaged in a series of communications regarding Walker's documents request, but the Association ultimately refused to produce the additional, undisclosed documents.

¶5    In September 2013, Walker filed the present action, petitioning the district court to order the production of the requested records and seeking an award of attorney fees and costs under the Act. The court heard oral arguments. Walker argued that because it had a proper purpose for its demand, it had a statutory right under the Act to inspect any of the Association's records. The Association responded that Walker lacked a proper purpose to access several of the records. One particular point of contention during the hearing concerned Walker's demand to inspect and copy a list of the email addresses and phone numbers of the Association's members. Walker asserted that communicating "efficiently" and "cost effectively" with other members regarding the Association's operations was a proper purpose. The Association countered that the email addresses and phone numbers of its members constituted private information it was not required to disclose.

¶6 The district court granted Walker partial relief. It ordered the Association to produce or "make available for inspection and copying" several records previously withheld. But the court also concluded that the Association was not required to produce other records, specifically the email addresses and phone numbers of the Association's members. The court's rationale was that Walker "[did] not have a proper purpose in requesting more than the name and address of the members of the Association." It reasoned that the Association "has produced documentation containing the names and addresses of the members which provides a sufficient method to contact the members."

¶7 Further, the court denied Walker's request for attorney fees, concluding that the Association had demonstrated it "had [a] reasonable basis for doubt about the right of [Walker] to seek records." As a result, the court found the Association had "refused inspection and copying in good faith." Under these circumstances, the court determined that an award of attorney fees was not warranted. Walker appeals.[1]

---

1. The Association filed a suggestion of mootness, asserting that Walker is no longer entitled to inspect and copy the Association's records because it sold its property. Though Walker acknowledged the sale of its property, it opposed the Association's suggestion of mootness on the ground that its access to the Association's records may reveal legal claims Walker still may have against the Association. This court previously ruled that this appeal is not moot with respect to the attorney-fees issue but reserved a ruling on mootness with respect to the records-access issue. *See generally* Utah R. App. P. 37(a). "The burden of persuading the court that an issue is moot lies with the party asserting mootness." *Salt Lake County v. Holliday Water Co.*, 2010 UT 45, ¶ 21, 234 P.3d 1105 (citation and internal quotation marks omitted). "An appeal is moot if during the pendency of the appeal circumstances change so that the

(continued…)

I. Records Access

¶8 Walker challenges the district court's denial of its request to access the Association's members' email addresses and phone numbers, arguing that the court erred in interpreting and applying the Act. Specifically, Walker argues the list constituted "any record of the Association" that Walker had a "proper purpose" to inspect and copy under the Act.[2] "The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusion." *Gutierrez v. Medley*, 972 P.2d 913, 914–15 (Utah 1998). Because we conclude that the Act only requires the Association to produce a list of its members' names and addresses, we need not decide whether Walker had a proper purpose for demanding access to the email addresses and phone numbers of the Association's members.

¶9 The Utah Revised Nonprofit Corporation Act requires nonprofit corporations to maintain various records related to

---

(…continued)
controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect." *Id.* ¶ 15 (citation and internal quotation marks omitted). The Association has not convinced us that the legal controversy no longer exists with respect to the records-access issue and has not demonstrated that granting judicial relief to Walker on that issue would not affect its rights. We therefore proceed to address the merits of Walker's appeal.

2. Walker asserts its proper purpose was to "contact [the other members] to discuss the actions of the Board of Directors and the management of [the Association]." The Association counters that the district court "properly concluded that ease of communication was not a proper purpose requiring the production of email addresses and telephone numbers when names and addresses had already been provided."

their operations. Utah Code Ann. § 16-6a-1601 (LexisNexis 2013). It also allows members of a nonprofit corporation to inspect and copy the records of the nonprofit corporation, provided that certain conditions are met. *Id.* § 16-6a-1602; *see also id.* § 16-6a-710(2) (providing voting members the right to request a member list). A member has the right to inspect and copy some records kept in the nonprofit corporation's principal office upon a written demand. *Id.* § 16-6a-1602(1); *see also id.* § 16-6a-1601(5). In addition, a member may inspect and copy "any of the other records" as long as a written demand is made "in good faith" and "for a proper purpose." *Id.* § 16-6a-1602(2).

¶10   The Act specifically sets forth the scope of a member's right to inspect a nonprofit corporation's records of its members. *Id.* § 16-6a-1603(4). To fulfill a member's request to inspect the nonprofit corporation's records regarding its members, the nonprofit corporation may "furnish[] to the . . . member a list of directors or members that . . . complies with Subsection 16-6a-1601(3)," *id.*, which requires a nonprofit corporation to "maintain a record of its members in a form that permits preparation of a list of the name and address of all members," *id.* § 16-6a-1601(3). Thus, a nonprofit corporation may satisfy a member's demand to access the nonprofit corporation's records of its members under section 16-6a-1603(4) by furnishing "a list of the name[s] and address[es] of all [its] members." *See id.* §§ 16-6a-1601(3), -1603(4).

¶11   Here, we agree with the district court's ultimate conclusion that the Association's production of "documentation containing the names and addresses of the members" was "sufficient" under the Act. As a member of the Association, Walker made a demand to inspect records regarding the Association's members. Because the Act specifies that a nonprofit corporation complies with such a demand by furnishing to the requesting member a list that includes "the name and address of all members," the Association complied with Walker's demand when it provided Walker with a list of its

members' names and addresses. *See id.* §§ 16-6a-1601(3), -1603(4). Accordingly, we affirm the district court's ruling that the Association was not required to produce the email addresses and phone numbers of its members.

## II. Attorney Fees

¶12    Walker next challenges the district court's denial of its request for attorney fees. It contends the Association's stated basis for refusing Walker's demand to produce certain records does not establish a good faith reason for not complying with the Act. The court denied Walker's request for attorney fees on the ground that the Association "refused inspection and copying in good faith." We conclude Walker has not demonstrated error in the district court's order.

¶13    The Act provides that a nonprofit corporation may be liable for a member's reasonable attorney fees incurred in securing a court order to compel access to records. Utah Code Ann. § 16-6a-1604(3)(a) (LexisNexis 2013). Specifically, it states that if a court orders a nonprofit corporation to allow the inspection or copying of records, "the court shall also order the nonprofit corporation to pay the . . . member's costs, including reasonable counsel fees, incurred to obtain the order." *Id.* Notwithstanding this provision, a nonprofit corporation may avoid liability for a member's attorney fees if it "proves that it refused inspection or copying in good faith because it had a reasonable basis for doubt about the right of the . . . member . . . to inspect or copy the records demanded." *Id.* § 16-6a-1604(3).

¶14    Generally, we review a district court's decision regarding whether attorney fees are recoverable in an action for correctness. *See R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 16, 40 P.3d 1119. But where, as here, a statute authorizing fees involves determining whether a party acted in good faith, the statute grants the district court discretion to decide the party's subjective intent, and we review the district court's decision for

clear error. *See Still Standing Stable, LLC v. Allen*, 2005 UT 46, ¶ 8, 122 P.3d 556. "When challenging a district court's findings of fact, the challenging party must show that the evidence, viewed in a light most favorable to the [district] court, is legally insufficient to support the contested finding." *Id.* ¶ 8 n.2 (alteration in original) (citation and internal quotation marks omitted).

¶15    The district court found that the Association's refusal to comply with Walker's demand was in good faith because the Association "had [a] reasonable basis for doubt about the right of [Walker] to seek records." Based on this finding, the court ruled that although it had ordered the Association to produce some records, the Association was not liable for the attorney fees Walker had incurred in obtaining the court order.

¶16    Walker has not carried its burden of persuasion to demonstrate district court error, because it has failed to support its argument with citations to authority and reasoned analysis based on that authority. *See Simmons Media Group, LLC v. Waykar, LLC*, 2014 UT App 145, ¶ 37, 335 P.3d 885; *see also* Utah R. App. P. 24(a)(9). Instead, Walker's analysis is limited to a conclusory statement that "failing to comply with [the] statutory duties [to produce records on the ground that the Association] desired guidance from the district court . . . cannot, as a matter of law, constitute good faith." Moreover, Walker has failed to demonstrate that the district court's finding of the Association's good faith is unsupported. As a consequence, because Walker has not carried its burden to show the court erred in denying its request for attorney fees under the Act, we are not convinced the district court erred.

¶17    In summary, we conclude that because a member's demand to inspect a nonprofit corporation's records of its members is satisfied by the statutorily required production of a list of its members' names and addresses, the district court properly denied Walker's request to inspect and copy a list of

the Association's members' email addresses and phone numbers. We also conclude that Walker has not demonstrated the district court erred in refusing to award attorney fees pursuant to the Act. We therefore affirm.

———————

VOROS, Judge (concurring in part and dissenting in part):

¶18    I concur in the majority opinion's denial of Walker's request for attorney fees. Otherwise, I respectfully dissent. I do not agree that we can avoid the question on which this case was decided below and argued on appeal: whether Walker stated a proper purpose for demanding to inspect and copy the corporate records at issue here. In my judgment, Walker did state a proper purpose, and furthermore, the corporate records Walker demanded directly relate to that purpose. I would accordingly reverse the district court on this point.

¶19    The majority opinion reasons as follows: (1) "To fulfill a member's request to inspect the nonprofit corporation's records regarding its members, the nonprofit corporation may 'furnish[] to the . . . member a list of directors or members that . . . complies with Subsection 16-6a-1601(3),'" *supra* ¶ 10 (quoting Utah Code Ann. § 16-6a-1603(4) (LexisNexis 2013)); (2) subsection 16-6a-1601(3) "requires a nonprofit corporation to 'maintain a record of its members in a form that permits preparation of a list of the name and address of all members,'" *id.* (quoting Utah Code Ann. § 16-6a-1601(3)); and thus (3) a nonprofit corporation satisfies a member's demand to inspect and copy the records pertaining to the nonprofit corporation's members by furnishing a list of the members' names and addresses, *id.* (citing Utah Code Ann. §§ 16-6a-1601(3), -1603(4)).

¶20    I am unpersuaded by the majority's analysis, because I believe its major premise misreads the scope of section 16-6a-1603(4). That section does not govern all demands to inspect a

nonprofit corporation's records of its members, only demands to inspect "the record of members under Subsection 16-6a-1601(3)." Utah Code Ann. § 16-6a-1603(4). Subsection 1601(3) requires a nonprofit corporation to maintain, or at least be able to readily provide, a list of the names and addresses of all its members. *Id.* § 16-6a-1601(3).

¶21 But Walker did not limit its demand to a list of member names and addresses maintained under subsection 1601(3). Walker sought a wide array of corporate records. Of particular relevance here, Walker sought to inspect and copy "the email addresses and phone numbers" of all the Association's members. Because subsection 1603(4) specifically applies only to demands for the list of member names and addresses under subsection 1601(3), that subsection does not govern Walker's demand. Accordingly, we must grapple—as did the district court and the parties on appeal—with whether Walker's demand satisfied other sections of the Act.

¶22 The Act identifies three categories of records. The first and narrowest category of records includes only an alphabetical list of the members' names, addresses, and allowed number of votes. *Id.* § 16-6a-1601(3). Subsection 1601(3) requires the nonprofit corporation to keep this list.[3] And subsection 1603(4)

---

3. Subsection 1601(3) provides:

> A nonprofit corporation or its agent shall maintain a record of its members in a form that permits preparation of a list of the name and address of all members:
> (a) in alphabetical order, by class; and
> (b) showing the number of votes each member is entitled to vote.

Utah Code Ann. § 16-6a-1601(3) (LexisNexis 2013).

requires the nonprofit corporation to provide a current version of the list to a member demanding to inspect and copy it.[4] The majority opinion addresses only this category of records.

¶23 The second category of records consists of those records that subsection 1601(5) requires every nonprofit corporation to keep. *Id.* § 16-6a-1601(5).[5] This category includes articles, bylaws,

---

4. Subsection 1603(4) imposes no obligations on the demanding member. Rather, it prescribes one manner by which the nonprofit corporation may comply with the member's demand to inspect and copy the records described in subsection 1601(3):

> The nonprofit corporation may comply with a . . . member's demand to inspect the record of members under [subsection 1601(3)] by furnishing to the . . . member a list of directors or members that: (a) complies with [subsection 1601(3)]; and (b) is compiled no earlier than the date of the . . . member's demand.

*Id.* § 16-6a-1603(4).

5. Subsection 1601(5) provides:
> A nonprofit corporation shall keep a copy of each of the following records at its principal office:
> (a) its articles of incorporation;
> (b) its bylaws;
> (c) resolutions adopted by its board of directors relating to the characteristics, qualifications, rights, limitations, and obligations of members or any class or category of members;
> (d) the minutes of all members' meetings for a period of three years;
> (e) records of all action taken by members without a meeting, for a period of three years;

(continued…)

resolutions, minutes, and financial statements. *See id.* Subsection 1602(1) governs a member's right to inspect and copy these records. *Id.* § 16-6a-1602(1). That subsection requires only that the inspection occur during regular business hours at the nonprofit corporation's principal office with at least five business days' notice. *Id.* § 16-6a-1602(1)(a)–(c).

¶24 The third category of records—the one at issue here— consists of all other records of the corporation. Subsection 1602(2) allows members "to inspect and copy any of the other records of the nonprofit corporation." Utah Code Ann. § 16-6a-1602(2) (LexisNexis 2013). No records are excluded. Hence, a member's right to inspect and copy *any of the other records* of the nonprofit corporation is broad. But not absolute: a demand under subsection 1602(3) must be made in good faith and seek records directly connected to a proper purpose:

> A . . . member may inspect and copy the records described in [subsection 1602(2)] only if: (a) the demand is made (i) in good faith; and (ii) for a proper purpose; (b) the . . . member describes with

---

(…continued)

> (f) all written communications to members generally as members for a period of three years;
> (g) a list of the names and business or home addresses of its current directors and officers;
> (h) a copy of its most recent annual report delivered to the division under Section 16-6a-1607; and
> (i) all financial statements prepared for periods ending during the last three years that a member could have requested under Section 16-6a-1606.

*Id.* § 16-6a-1601(5).

reasonable particularity the purpose and the records the director or member desires to inspect; and (c) the records are directly connected with the described purpose.

*Id.* § 16-6a-1602(3). Subsection 1602(7) imposes an additional constraint. Subsection 1602(7) states that a "member may not use any information obtained through the inspection or copying of records permitted by [subsection 1602(2)] for any purposes other than those set forth in a demand made under [subsection 1602(3)]." *Id.* § 16-6a-1602(7).

¶25 The present dispute does not concern the first category of records (an alphabetical list of the members' names and addresses) or the second (records the Act requires every nonprofit corporation to keep). *See id.* § 16-6a-1601(3), (5). Rather, it concerns "other records of the nonprofit corporation." *See id.* § 16-6a-1602(2). Accordingly, we are called upon to decide whether Walker complied with the requirements of subsection 1602(3) that limit the scope of the right to inspect such records.

¶26 Again, subsections 1602(2) and 1602(3) allow a member to demand to inspect any other records of a nonprofit so long as four requirements are met: (1) the demand is made in good faith; (2) the demand is for a proper purpose; (3) the demand describes the purpose of the inspection and the records to be inspected with particularity; and (4) "the records are directly connected with the described purpose." *Id.* § 16-6a-1602(3). And for purposes of section 1602, the Act defines "proper purpose" as "a purpose reasonably related to the demanding member's . . . interest as a member." *Id.* § 16-6a-1602(4)(b).

¶27 The district court did not rule, nor does the Association contend, that Walker did not make its demand in good faith. And although the district court and the parties speak in terms of whether Walker identified "a proper purpose" for inspecting and copying the demanded records, neither contests that

Walker's stated purposes in demanding the records reasonably related to its interest as a member of the nonprofit corporation. Accordingly, Walker's demand did have a proper purpose. But that fact does not conclude the matter. Walker must also show that the records it demands are "directly connected with" its described purposes. *See id.* § 16-6a-1602(3)(c).

¶28    Walker's demand to inspect and copy records stated five purposes. These included (1) to verify the Association's compliance with its governing documents, statutory law, and other regulations; (2) to investigate the cost and nature of services provided by employees and vendors for the Association; and (3) to communicate with other Association members concerning the Association's compliance or lack of compliance with legal requirements and any conflicts of interest in the operation of the Association.

¶29    Although the district court's order speaks in terms of Walker's lacking a proper purpose, the ruling in fact concludes that Walker did not need all the records it demanded to accomplish its purpose. Specifically, the court found that Walker could contact other members of the nonprofit corporation by using the street addresses the Association had already provided, rather than with the members' phone numbers and email addresses:

> The court finds [Walker] does not have a proper purpose in requesting more than the name and address of the members of the Association. The court finds that the [Association] has produced documentation containing the names and addresses of the members which provides a sufficient method to contact the members.

Similarly, the district court ruled that Walker did "not have a proper purpose in requesting the logs or records related to the [Association's] members' access to the [Association's]

Clubhouse." In effect, the district court ruled that these records were not "directly connected" to Walker's stated purposes.

¶30    I do not believe the Act authorizes this level of judicial scrutiny. First of all, Walker's stated purposes are without question "reasonably related to [its] interest as a member" of the nonprofit corporation. Utah Code Ann. § 16-6a-1602(4)(b) (LexisNexis 2013). Those purposes include communicating with other members concerning whether the Association's directors are running the Association in compliance with legal requirements and free of conflicts of interest. Furthermore, in my opinion, the phone numbers and email addresses of the other members are directly connected to Walker's proper purpose of communicating with other members of the Association. Indeed, communicating with a person would seem to be the most obvious use for that person's phone number and email address.

¶31    The district court ruled that the list of members' names and addresses provides "a sufficient method to contact the members." Maybe so, but that is not the statutory test as I understand it. The statute requires that the records be "directly connected" with—not necessarily essential to—a proper purpose; that Walker could communicate with its fellow members by letter does not, under the Act, restrict it to that obsolescent mode of communication.

¶32    Similarly, I believe Walker's demand to inspect and copy the clubhouse logs is directly connected to Walker's purpose of ensuring the Association's conflict-free compliance with applicable legal requirements. Members' assessments pay for common areas, and the use of common areas constitutes a valuable resource of the nonprofit corporation. And an entity's declaration, bylaws, or rules may address who can use common areas and when. Accordingly, knowing who has used common areas and when is directly connected to Walker's stated purpose of investigating whether those running the Association have

complied with the nonprofit corporation's declaration, bylaws, and rules.

¶33    For the foregoing reasons, I would reverse the judgment of the district court. However, like the majority, I would deny Walker's request for attorney fees. In my judgment, the Association's reading of the statutory scheme, though legally wrong, is not unreasonable.

————————